UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Byron Martin, Brian          :
Dyjack, and Richard Soucy,   :
         Plaintiffs,         :
                             :
     v.                      :    File No. 1:05-CV-28
                             :
Steven Gold, Paul            :
Brosseau, Keith Tallon,      :
Ellen McWard, Michael        :
Foisy, James Kamel,          :
Stephen Lavoie, Dustin       :
Warburton, Keith Reilly,     :
Thomas Powell, Diane         :
Bogdan, Dr. Cotton, Dr.      :
Labatti, Robert Hofmann,     :
Richard Bess, Sue James,     :
Trina Nutter, and Celeste    :
Girrell,                     :
         Defendants.         :

## MAGISTRATE JUDGE'S REPORT AND RECOMEMNDATION
(Papers 21, 28, 30, 34, 36, 38, 41, 43 and 50)

Plaintiff Byron Martin, a Vermont inmate proceeding
*pro se*, claims that his treatment in prison has been
constitutionally deficient in several respects.  Martin's
complaint and proposed amendments charge that the
defendants have (1) subjected him to constant
illumination in his prison cell; (2) denied him a
vegetarian diet in violation of his religious rights; (3)
imposed a "bad day" disciplinary sanction without
providing due process; (4) placed him in "the hole"
without due process; (5) denied him medication for his

psychiatric needs; and (6) denied him dentures for a period of one year.  (Papers 1, 30, 38, 41 and 43).

The defendants in this case consist of a large group of state employees (hereinafter "State Defendants") and two doctors, defendants Cotton and Labatti.  The defendants have moved to dismiss and/or for summary judgment arguing, *inter alia*, that Martin has failed to exhaust his administrative remedies with respect to four of his six claims; that he is not entitled to compensatory or punitive damages; that his official capacity claims are barred by the Eleventh Amendment; that his claims for injunctive relief are moot due to his transfer out of state; and that his state law claims are barred for lack of jurisdiction and failure to state a claim.  (Papers 21, 28 and 34).[1]  The State Defendants have also opposed Martin's motion to amend his complaint. For the reasons set forth below, I recommend that the motions to dismiss be GRANTED in part and DENIED in part, and GRANT Martin's motions to amend.[2]

---

[1]  The motions were filed by an attorney representing the state employees and by counsel for Dr. Cotton.  Dr. Labatti has not yet been served.

[2]  Also pending before the Court is Martin's motion for joinder with a case brought by inmate David McGee in

## Factual Background

In his initial complaint, Martin outlines the six claims listed above and asserts that he is alleging constitutional violations pursuant to 42 U.S.C. § 1983. With respect to his claim of constant illumination, Martin states that "it is cruel and unusual punishment to have constant illumination of lights on in cells."  For relief, Martin seeks an injunction compelling the Vermont Department of Corrections ("DOC") to "shut out the lights and if they need to 'check' in our cell for counts or whatever then use flashlights like the rest of the institutions in the U.S."  (Paper 1 at 4).

Martin's next claim is that he is being deprived a vegetarian diet in violation of his First Amendment rights.  Id. at 4-5.  Martin claims that he is a Buddhist, and that his religious beliefs do not allow him to eat meat.  He requests an injunction allowing him vegetarian meals, as well as compensatory and punitive

---

McGee v. Reed, 1:04-CV-335.  (Paper 36).  In that case, the Court allowed Martin to join McGee's case as a plaintiff, but denied the motion to join the two actions. See McGee, 1:04-CV-335 (Paper 39).  For the reasons set forth by the Court in the McGee case, Martin's motion for joinder (Paper 36) is DENIED.

damages arising out of defendants Gold and Tallon "refusing a vegetarian diet to me maliciously and sadistically."  Id. at 5.

Martin's third claim is entitled "bad day," which is reportedly the name given by the DOC to a particular "system of discipline."  A "bad day" can include loss of recreation privileges and "non programming activities for that day" (Paper 1-2 at 10), and can allegedly be imposed by a correctional officer "for any reason whatsoever" without a "hearing to produce the facts or have an inmate defend his innocence.  The 'punishment' is not very severe yet it is implemented without due process." (Paper 1 at 6).  For relief on this claim, Martin seeks to have the "bad day" punishment abolished, and that he be awarded $500 for each time he received a "bad day" punishment.

Martin further claims that he was placed in "the hole" twice without a hearing and for no reason.  After being placed in "the hole," the charges against him were allegedly dismissed and he was eventually released. Again, Martin is asking for $500 a day in compensation for each day in "the hole," plus punitive damages against

each of the defendants.

Martin's fifth claim is that he has been denied
medication for his ADHD.  DOC psychiatrists have
allegedly refused to give him the required medication
because "this type of medication can be abused."  Id. at
8.  Martin requests an injunction ordering DOC staff to
provide him with medication, as well as compensatory and
punitive damages.

Finally, Martin alleges that the last of his teeth
were pulled while he was incarcerated, but DOC failed to
provide him with dentures for over a year.  Martin
specifically blames defendant Bogdan, "head nurse of the
Vt. DOC," for his mistreatment, and asks for compensatory
and punitive damages.

Since filing his initial complaint, Martin has
offered numerous amendments to his claims.  (Papers 39,
38, 41 and 43).  Most of these amendments, however,
merely provide additional facts underlying his initial
claims.  The amendments also name additional defendants.
For example, Martin's first amended complaint (Paper 30)
expands on his claim that he was placed in segregated
confinement.  Again, Martin asserts that in each of

three[3] occasions, the charges that had resulted in his placement in segregation were dismissed.  In the proposed amendment, Martin names four new defendants, including current DOC Commissioner Robert Hoffman.

Martin's next amendments expand on his dietary, dental, and illumination claims.  (Papers 38, 40 and 43, respectively).  His amendment to the dietary claim is comprised of 19 pages of handwritten text, provides additional explanation about his Buddhist faith, and asserts a new claim under the Religious Freedom Restoration Act ("RFRA").  (Paper 38).  Martin alleges that although a prison facility in Kentucky allowed him vegetarian meals from the start, Vermont prisons required him to litigate for two months "until they saw the light." Id. at 5.

In the amendment to his dental claim, Martin explains that he had nearly all of his teeth when he was first incarcerated in 2002.  (Paper 40-1 at 2).  He claims that "because of various reasons, such as stress related physical injury due to the extreme freezing temp

_____

[3] The initial complaint alleged only two such incidents.

[sic] . . . my teeth began to hurt." Id. By November, 2003, all of his teeth had been pulled. Martin claims that he did not receive dentures until 13 months later. Id. In the meantime, Martin allegedly suffered "pain so bad that I had to lay down at night with such an excruciating headache along with an empty stomach because when I tried to eat the prison food without teeth I could not chew because the pain was too intense to try and break up the food in my mouth with no teeth." Id. at 6.

Martin's final amendment to date provides additional facts with respect to his constant illumination claim. (Paper 43). Specifically, Martin claims that as a result of constant lighting in Vermont prisons, he has suffered migraines, damage to his eyesight and stress.

The defendants have filed motions to dismiss and/or for summary judgment. (Papers 21 and 28). Also, in response to Martin's multiple motions to amend his complaint, the defendants have either re-filed or supplemented their motions to dismiss and have opposed Martin's most recent amendments. (Papers 34, 35, 37, 45 and 46).

## Discussion

7

I.   <u>Motions To Amend Complaint</u>

     The State Defendants have opposed Martin's motions
to amend his complaint.  (Paper 46).  Conceding that
Martin is allowed one amendment "as a matter of course"
before a responsive pleading is served, the State
Defendants oppose all but Martin's first amended
complaint.  In support of their opposition, the State
Defendants primarily argue that the facts alleged in
those amendments fail to properly counter their summary
judgment motion, and should therefore be barred.  (Paper
46 at 5-8).  The State Defendants also charge that
Martin's amendments were "unduly delayed."  <u>Id.</u> at 9.

     The rule for amending a complaint is quite lenient,
stating that leave shall be granted "freely when justice
so requires."  Fed. R. Civ. P. 15(a).  Here, Martin's
amendments consist mostly of additional facts in support
of his initial claims.  The amendments were all filed
prior to any discovery and, indeed, prior to the filing
of answers by the defendants.  While the defendants have
had to supplement their filings in response to Martin's
amendments, they have not suffered prejudice sufficient
to bar his additional claims.  Whether or not the new

allegations survive summary judgment will be addressed below or in future Court rulings.  The motions to amend (Papers 30, 38, 41 and 43) are, therefore, GRANTED.

II.   Conversion of the Motions to Dismiss[4]

The State Defendants first argue that Martin has failed to exhaust his administrative remedies.  The State Defendants have also asked that the Court convert their motion to dismiss to a motion for summary judgment. (Paper 21).[5]  Therefore, the first question the Court

_____

[4]   The State Defendants filed the first motion to dismiss in this case.  (Paper 21).  Defendant Cotton has incorporated the State Defendants' arguments into his motion to dismiss, and has provided additional arguments for dismissal of Martin's psychiatric care claims. (Paper 28 at 1).  As discussed below, it appears that Martin has tried to amend his psychiatric care claims, but that his amendment was never filed with the Court. Accordingly, the Court should withhold judgment on Cotton's additional arguments (Papers 28 and 35) until Martin has had an opportunity to re-submit his amended claims.

Because Cotton's separate arguments are not now under consideration, I will refer primarily to the State Defendants' motion to dismiss.  Any rulings on that motion will, of course, apply to defendant Cotton by virtue of his incorporation of the State Defendants' arguments.

[5]   The State Defendants assert that they have filed a motion to dismiss, rather than a motion for summary judgment, because Rule 56 does not stay their time for filing an answer.  As this Court has held in several recent cases, the failure to exhaust administrative remedies is an affirmative defense that must be proven, and therefore may require a summary judgment motion.  The

should address is whether such conversion is appropriate.

As this Court has noted in previous cases, it is not clear in this Circuit whether presenting evidence beyond the pleadings in order to resolve a question of exhaustion of administrative remedies is best brought as a motion to dismiss or a motion for summary judgment. See McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003). Several lower courts, however, have agreed that because exhaustion is an affirmative defense that must be proven, the motion must be either brought as or converted to a motion for summary judgment. See Scott v. Gardner, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003); McCoy, 255 F. Supp. 2d at 251; Torrence v. Pesanti, 239 F. Supp. 2d 230, 233 (D. Conn. 2003). Accordingly, the State Defendants have asked that the Court convert their motion to dismiss to a motion for summary judgment.

A district court may convert a motion to dismiss

---

Court has also stated, however, that merely filing a motion to dismiss, thereby staying the time for filing an answer, and asking the Court to convert the motion to one for summary judgment is not the preferred practice. In the future, it would be preferable if defendants would file an answer prior to, or in conjunction with, their motion for summary judgment, thereby rendering the conversion process unnecessary.

into a summary judgment motion provided that the court
gives "sufficient notice to an opposing party and an
opportunity for that party to respond." Groden v. Random
House, Inc., 61 F.3d 1045, 1052 (2d Cir. 1995).  In such
a conversion, "[n]otice is particularly important when a
party is proceeding *pro se* and may be unaware of the
consequences of his failure to offer evidence bearing on
triable issues." Beacon Enterprises, Inc. v. Menzies,
715 F.2d 757, 767 (2d Cir. 1983).  When considering
conversion, a court should also take into consideration
"the nature of the papers submitted by the [*pro se*]
litigant and the assertions made therein as well as the
litigant's participation in proceedings before the
District Court." Vital v. Interfaith Med. Ctr., 168 F.3d
615, 621 (2d Cir. 1999).

    Here, the State Defendants have set forth their
motion in the format of a summary judgment motion,
complete with a statement of undisputed facts.  (Paper
21).  The State Defendants have also provided Martin with
a formal notice to *pro se* litigant of a summary judgment
filing as required by Local Rule 7.1(c)(6).  (Paper 22).
In response, Martin has directly responded to the State

Defendants' factual statements as required by Rule 56. (Paper 49). It is, therefore, clear that Martin had sufficient notice of a summary judgment filing, and has had an opportunity to respond appropriately to that motion. In light of these facts, the Court should construe the State Defendants' motion to dismiss as a motion for summary judgment.

III.  <u>Summary Judgment Standard</u>

Summary judgment should be granted only if, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Moller v. North Shore Univ. Hosp.</u>, 12 F.3d 13, 15 (2d Cir. 1993). A fact is material when it affects the outcome of the suit under governing law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute of fact is not genuine if there is insufficient evidence for a jury to find in the nonmoving party's favor. <u>See</u> <u>id.</u> at 252.

In this case the State Defendants, as the moving parties, carry the burden of establishing that no genuine

12

issue of fact exists.  See Celotex Corp., 477 U.S. at

323.  Their burden will be met if they "can point to an

absence of evidence to support an essential element of

the nonmoving party's claim."  Goenaga v. March of Dimes

Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

If the State Defendants meet this burden, the plaintiff

must respond with a showing sufficient to establish the

existence of that claim or element.  See Celotex Corp.,

477 U.S. at 322-25.  "[M]ere speculation and conjecture

is insufficient to preclude the granting of the motion."

Harlen Assocs. v. Incorporated Vill. of Mineola, 273 F.3d

494, 499 (2d Cir. 2001) (citing Western World Ins. Co. v.

Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

While the fact that the plaintiff is proceeding *pro se*

requires the Court to read his filings "liberally and

interpret them to raise the strongest arguments that they

suggest," the application of this modified standard "does

not relieve plaintiff of his duty to meet the

requirements necessary" to defeat the State Defendants'

motion.  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50

(2d Cir. 2003) (citation omitted).

IV.  Exhaustion

13

As noted above, the State Defendants' first argue
that Martin has failed to exhaust his administrative
remedies with respect to four of his six claims.  The
Prison Litigation Reform Act of 1996 ("PLRA") amended 42
U.S.C. § 1997e(a) to provide that:

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other
> correctional facility until such administrative
> remedies as are available are exhausted.

The Second Circuit has held that administrative
exhaustion is not a jurisdictional predicate.  <u>See</u>
<u>Richardson v. Goord</u>, 347 F.3d 431, 434 (2d Cir. 2003).
In addition, as discussed above, the Second Circuit
considers a failure to exhaust administrative remedies to
be an affirmative defense.  <u>See</u> <u>Ziemba v. Wezner</u>, 366
F.3d 161, 163 (2d Cir. 2004); <u>Jenkins v. Haubert</u>, 179
F.3d 19, 28-29 (2d Cir. 1999).  The defendants thus bear
the burden of proving the plaintiff's failure to exhaust
administrative remedies.  <u>See</u>, <u>e.g.</u>, <u>Ruocco v. Tung</u>, 2004
WL 721716, at *5 (D. Conn. March 30, 2004 ) ("By
characterizing non-exhaustion as an affirmative defense,
the Second Circuit requires the defendants to present
proof of non-exhaustion."); <u>Reyes v. Punzal</u>, 206 F. Supp.

14

2d 431, 433 (W.D.N.Y. 2002); <u>Hallett v. New York State</u>
<u>Dep't of Correctional Serv.</u>, 109 F. Supp. 2d 190, 196-97
(S.D.N.Y. 2000).

The Second Circuit has also held that the PLRA only
requires exhaustion where administrative remedies are
"available," and that "availability" under the PLRA means
"the possibility of some relief for the action complained
of." <u>Abney v. McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004)
(citing <u>Booth v. Churner</u>, 532 U.S. 731, 738 (2001)).
Recently the Second Circuit has explained that "there are
certain 'special circumstances' in which, though
administrative remedies may have been available . . . the
prisoner's failure to comply with administrative
procedural requirements may nevertheless be justified."
<u>Giano v. Goord</u>, 380 F.3d 670, 677 (2d Cir. 2004).  Such
circumstances may include "situations where prison
officials fail to timely advance the inmate's grievance
or otherwise prevent him from seeking his administrative
remedies . . . [or] where claims are fully exhausted
through other administrative procedures which were
pursued for good reasons."  <u>Abney v. McGinnis</u>, 380 F.3d
663, 667 (2d Cir. 2004) (citing <u>Hemphill v. State of New</u>

15

York, 380 F.3d 680, 687 (2d Cir. 2004)).

The DOC has established a procedure for inmates wishing to voice a grievance.  (See Paper 21, Exhibit A, Attachment 2).  First, the inmate must file a "grievance form one" which the DOC then investigates and responds to on a "grievance form two."  The investigator has 15 days to return the grievance form two to a work site manager who has three days to return it to the inmate.  If an inmate is dissatisfied with the DOC's form two response, the inmate has the right to file a "grievance form three" with the Commissioner of Corrections.  The Commissioner then investigates the form three complaint and provides a response.  This response to the form three complaint is final.  Once the form three response is rendered, the inmate's administrative remedies are exhausted.  Id.

The DOC mandates that all inmates be notified of the grievance procedure.  The DOC also specifically notes that out-of-state inmates under the "care and custody of the Vermont Department of Corrections" may submit grievances to their caseworker in Vermont using letter format.  Finally, the DOC allows that "[i]f, after any phase in the grievance process, the grievance has not

16

been responded to within the prescribed time frames, the offender may assume the grievance has been denied and may proceed to the next step in the grievance process." Id.

In support of their exhaustion argument, the State Defendants have filed the affidavit of DOC employee John Murphy. (Paper 21, Ex. A). In his affidavit, Murphy states that the DOC's database for level three grievance has been searched for the period of January 1, 2004 through March 31, 2005, and that Martin did not file any such grievances during that time pertaining to "1) a claim regarding 24-hour cell lights at SSCF, 2) a claim regarding "bad day" punishments at SSCF, 3) a claim regarding segregation time at SSCF, and 4) a claim regarding appropriate psychiatric medication." Id. Consequently, the State Defendants have moved for summary judgment on these four claims. There is no dispute that Martin exhausted his administrative remedies for his vegetarian diet and dental care claims.

Martin argues that with respect to each of the claims in question, he has either exhausted his administrative remedies or exhaustion is not required. In support of his claim that no exhaustion is required,

17

Martin cites <u>Wright v. Hollingsworth</u>, 201 F.3d 663, 665 (5th Cir. 2000) for the proposition that a prisoner seeking monetary damages or other relief that is unavailable at the administrative level is not required to exhaust his administrative remedies.  In <u>Booth v. Churner</u>, 532 U.S. 731, 738-41 (2001), however, the Supreme Court ruled to the contrary, holding that the exhaustion requirement extends to § 1983 cases in which plaintiffs seek monetary damages or other relief, regardless of whether such relief is, in fact, available administratively.  Consequently, the Fifth Circuit subsequently reversed its holding in <u>Wright</u>, and Martin's argument is without legal support.  See <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001).

Martin has also submitted a series of grievance forms which, he claims, demonstrate exhaustion.  In bringing his constant illumination claim, Martin submitted a grievance form one dated January 12, 2005. (Paper 43, Exhibits at 8).  His grievance form three was dated April 10, 2005.  <u>Id.</u>, Exhibits at 9.  Martin filed his complaint in this case over three months prior, on January 28, 2005.

18

The rule in this Circuit is that exhaustion after filing suit is insufficient.  See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), overruled in part on other grounds by Porter v. Nussle, 534 U.S. 516, at 529-31 (2001).  Accordingly, when faced with a case where exhaustion was not complete prior to the filing of the complaint, the only action a Court in this Circuit may take is to dismiss the claim.  See, e.g., Martinez v. Dr. Williams R., 186 F. Supp. 2d 353, 356 (S.D.N.Y. 2002) ("Exhausting administrative remedies after a complaint is filed will not save a case from dismissal.").  Therefore, Martin's effort to exhaust his constant illumination claim while this case was pending will not avoid dismissal of that claim.

Martin contends, in the alternative, that even if his administrative remedies were not exhausted on the constant illumination claim, those remedies were nonetheless exhausted by a fellow inmate.  That inmate, David McGee, has filed suit in this Court claiming constant illumination in Vermont prisons, and as mentioned above, Martin has been allowed to join that case as a plaintiff.  See McGee v. Reed, 1:04-CV-335

(Paper 39).  McGee's exhaustion of his own administrative remedies does not, however, necessarily exhaust Martin's remedies on an identical or similar claim.  Indeed, "[t]he fact that other inmates filed similar grievances does not excuse plaintiff from filing his own grievance.  To allow plaintiff to circumvent the PLRA's exhaustion requirement because other inmates filed similar grievances would be contrary to Congress's intent in enacting the [PLRA]."  Laureano v. Pataki, 2000 WL 1458807, at *2 (S.D.N.Y. Sept. 29, 2000); see Morrow v. Goord, 2005 WL 1159424, at *3 (W.D.N.Y. May 17, 2005).  Therefore, the Court should not accept McGee's grievances as replacements for Martin's untimely efforts to exhaust his administrative remedies.[6]

Martin's segregation claim is similarly barred.  In his initial complaint, Martin asserted that he was wrongfully placed in "the hole" on two occasions, "from

_____

[6]  In McGee's litigation, the plaintiffs have requested that the action be certified as a class action.  If a class is certified, there is authority supporting the argument that McGee's exhaustion satisfies the exhaustion requirement for the class.  See Orafan v. Goord, 2003 WL 21972735, at *5 n.7 (N.D.N.Y. Aug. 11, 2003).  That issue, however, will be addressed in the McGee litigation, and need not be resolved here.

July 9 - until July 12th and December 23rd - until
December 31st." (Paper 1 at 7). Martin has subsequently
contended that he is suing for "three periods in
segregation." (Paper 49 at 4). Regardless of the number
of segregations in question, Martin has again failed to
show that he exhausted his administrative remedies prior
to filing suit.

Martin points the Court to several grievances filed
between 2003 and 2005 with respect to his allegedly
wrongful segregations. (Paper 51-2 at 8-15). Of these
grievances, the only form three grievances pertaining
directly to wrongful segregations were submitted on April
10, April 11 and April 19, 2005. (Paper 30-2 at 1, 2 and
11; Paper 51-2 at 13). As with his illumination-related
grievances, these grievances were filed after this suit
was commenced, and therefore do not satisfy the PLRA's
exhaustion requirement. Martin asserts that other form
three grievances from earlier dates pertain to his
wrongful segregation claim, but a review of those
grievances reveals that they pertain only to his claim
that personal property was by prison personnel and not

21

returned.  (Paper 30-2 at 7; Paper 51-2 at 11).[7]
Consequently, these earlier grievances did not exhaust
his administrative remedies with respect to his wrongful
segregation claim.

In response to the argument that he failed to
exhaust his remedies for his psychiatric medication
claim, Martin refers the Court to an exhibit.  (Paper 49
at 4).  This exhibit, however, is not a grievance form.
Instead, it states that "[t]here is, in my possession, a
level #3 grievance answered by Steven Gold dated November
8[th] 2004.  If you need a copy I will send it in to you yet
check in the files of Vt. DOC."  (Paper 49 at 2).  Martin
further explains that "Gold told me that Dr. Cotton
prescribed something and if I don't like it then let him
know.  I did on 1-13-05 again."  (Paper 51-2 at 16).  In

---

[7]  The State Defendants have also submitted a
grievance form three, dated December 2, 2004, relating to
Martin's discipline.  (Paper 21-5 at 13).  In this
grievance, Martin claims that he was wrongly accused of
possessing contraband.  He also complains that DOC
"willfully and wrongly took my boots without my
permission . . . ."  This grievance appears to relate to
an incident on October 5, 2004.  Martin's current claims
of wrongful segregation pertain to periods of segregation
beginning in April, 2003, on June 9, 2004, and on
December 23rd, 2004.  (Paper 30 at 1-2).  Consequently, it
does not appear that the December 2, 2004 grievance form
three related to any of his current claims.

a post-script to this exhibit, Martin claims that he included this grievance form "as an exhibit #1-A of the 'psych' amended complaint."

The Court has not received a so-called "psych" amended complaint.  It has received single-issue amendments with respect to Martin's segregation (Paper 30), vegetarian diet (Paper 38), dental care (Paper 40) and constant illumination (Paper 43) claims, but no such amendment dealing specifically with his mental health care.  The defendants, however, appear to have received some sort of amendment to this claim, as defendant Cotton has supplemented his motion to dismiss in response to an amendment that reportedly accuses him of defamation. (Paper 35).  Again, the Court has received no such amendment.  Consequently, the Court will not rule on the exhaustion issue, or Cotton's motions to dismiss, until Martin has filed his amended "psych" complaint with the Court.  Martin may file this proposed amendment within 30 days of the date of this Report and Recommendation. Failure to comply with this deadline may result in dismissal of his "psych" claim due to a lack of evidence of exhaustion.

The State Defendants' final exhaustion challenge pertains to Martin's "bad day" claim.  The only exhibit presented with respect to this claim is a grievance form two in which the investigator wrote that the "bad day" policy is "not grievable."  (Paper 1-2 at 9).  Martin claims that despite this response, he still submitted a grievance form three to the Commissioner, and has attached an undated copy of that form to his most recent filing.  (Paper 51-2 at 5).[8]

Whether Martin fully exhausted this claim is immaterial, since an inmate who is told that a claims is not grievable is not required to appeal the investigator's determination.  See Ziemba v. Armstrong, 343 F. Supp. 2d 173, 180 (D. Conn. 2004) (where plaintiff filed grievance form one but learned that issue was not grievable, claim was exhausted); Kearsey v. Williams, 2004 WL 2093548, at *4 (S.D.N.Y. Sept. 20, 2004); Cf. Giano v. Goord, 380 F.3d 670 (2d Cir. 2004) (failure to exhaust was justified where inmate failed to file

---

[8]   The Form is dated July 14, 2005 at the top, but it is not clear whether this is the date that Martin filed to form with DOC, or that date that he sent it to the Court.  The Court received the form from Kentucky on July 22, 2005.

grievance based on mistaken, but not unreasonable, belief that claim regarding a disciplinary proceeding was not grievable). Accordingly, the Court should not dismiss this claim for lack of exhaustion.

In sum, Martin has failed to exhaust his constant illumination and wrongful segregation claims. These claims should, therefore, be DISMISSED. See Ortiz v. McBride, 380 F.3d 649, 656-662 (2d Cir. 2004) (PLRA requires only the dismissal of unexhausted claims, and not dismissal of entire complaint when complaint consists of both exhausted and unexhausted claims). Martin's exhaustion with respect to his psychiatric care claim is not clear without the benefit of the amended complaint that Martin allegedly filed, but the Court has never received. The Court will withhold judgment on that claim for 30 days as it awaits the filing of Martin's "psych" amended complaint. Finally, Martin's "bad day" claim should be deemed exhausted, and the State Defendants' motion for summary judgment on this claim should be DENIED.

V.   Actual Physical Injury

The defendants also argue that Martin's damages

claims are barred by his failure to allege physical injury.  The PLRA states in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e). Also, the Second Circuit has held that the PLRA bars claims for compensatory damages arising out of claims of mental or emotional injury.  See Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002).

The State Defendants claim that in addition to Martin's failure to allege any physical injury, his claims are not of the sort that would lead to physical injury.

> Indeed, there is no basis to conclude that cell illumination could cause a physical injury, that the absence of a strict vegetarian diet could cause physical injury, that the minor discipline available according to the "bad day" Exhibit Plaintiff attached to his complaint and amended complaint could cause physical injury, that two short stints in segregation could cause physical injury, that the denial of Plaintiff's psychotropic drug of choice could cause physical injury, or that the absence of dentures could cause physical injury.

(Paper 34 at 12).  In response, Martin contends that he suffered physical injury on "the 'dental' issue . . . the

24 hr. lights issue . . . and the vegetarian issue."
(Paper 51 at 1).  Martin also argues that he is not
required to show physical injury on a First Amendment
claim asserting his religious right to special meals.

As a part of his amended dental care claim, Martin
has provided a sworn affidavit in which he clearly sets
forth the physical pain he experienced as a result of his
lack of dentures.  (Paper 40 at 6).  In his affidavit,
Martin explains that he could not chew his food "because
the pain was too intense to try and break up the food in
my mouth with no teeth."  Id.  Martin also states that
his dental condition caused him "excruciating headache[s]
along with an empty stomach."  Id.   Although headaches
and hunger pains may not satisfy the PLRA requirement,
see, e.g., Pinkston-Bey v. DeTella, 1997 WL 158343, at *3
(N.D. Ill. Mar. 31, 1997) (severe headaches are not
physical injury), Martin's allegations of consistent
physical pain for the nearly one year period in which he
was toothless should render him eligible for compensatory
damages on this claim.

Martin's vegetarian diet claim is brought under RFRA
and the First Amendment.  As Martin appropriately argues,

27

the PLRA's physical injury requirement does not bar a
damages claim under the First Amendment.  See Lipton v.
County of Orange, 315 F. Supp. 2d 434, 457-58 (S.D.N.Y.
2004).  "[A] First Amendment deprivation presents a
cognizable injury standing alone and the PLRA 'does not
bar a separate award of damages to compensate the
plaintiff for the First Amendment violation in and of
itself.'"  Id. at 457 (quoting Ford v. McGinnis, 198 F.
Supp. 2d 363, 366 (S.D.N.Y. 2001) (concluding that the
PLRA was applicable to First Amendment claims, and did
not preclude an award of compensatory damages for the
denial of a kosher meal to the plaintiff).  Accordingly,
Martin's claim for compensatory damages resulting from
the alleged First Amendment violation should survive the
State Defendants' motion for summary judgment.

     Martin does not argue, and there is no evidence to
show, that the DOC's "bad day" policy resulted in
physical harm.  Unlike First Amendment claims, the PLRA's
physical injury requirement does apply to due process
claims.  See, e.g., Rivera v. Wohlrab, 2000 WL 1300403,
at *1 (S.D.N.Y. Sept. 14, 2000).  Therefore, any claim
for compensatory damages with respect to the "bad day"

28

policy should be DISMISSED.

Because Martin has failed to exhaust his administrative remedies with respect to the constant illumination and wrongful segregation claims, the Court need not address the State Defendants' PLRA arguments on these claims.  As to Martin's claim of inadequate psychiatric care, the Court may address the PLRA issue on that claim once it has been able to assess whether or not the claim has been administratively exhausted.

VI.  <u>Punitive Damages</u>

Although the Second Circuit has generally barred prisoner claims for compensatory damages resulting from mental or emotional harm, it has also held that nominal and/or punitive damages are permissible under the PLRA. <u>See</u> <u>Thompson v. Carter</u>, 284 F.3d 411, 418 (2d Cir. 2002). Here, Martin has asked for punitive damages on several of his claims.  A claim for punitive damages under § 1983 must show that "'the defendant's conduct [was] motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  <u>See</u> <u>Disorbo v. Hoy</u>, 343 F.3d 172, 186 (2d Cir. 2003) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56

(1983)).

Martin claims that certain defendants acted with "deliberate indifference" toward his needs, and at times in a manner that approached "torture." (Paper 40 at 6). The State Defendants argue that such statements are "entirely conclusory" and should not survive summary judgment. (Paper 34 at 13 n.14). The Court notes, however, that there has been no discovery in this case to date. Because there has been no discovery, Martin has had little opportunity to develop evidence in support of his claims for punitive damages. Unlike the evidence pertaining to exhaustion, proof of the defendants' intent is not readily available to an inmate when filing his complaint. Since his allegations would be arguably sufficient to survive a motion to dismiss, the Court should not dismiss them at this early stage in the case. Once Martin has had an opportunity to develop his claims more fully, the defendants may again move for summary judgment on these claims if appropriate.

VII.  Official Capacity Claims

The defendants next argue that Martin's damages claims are barred by virtue of their immunity from suit

in their official capacities.  Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 471 (1985).  Moreover, the Supreme Court has held that, just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them.  See Hafer v. Melo, 502 U.S. 21, 27 (1991).

With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the State Defendants from a damages action brought against them in their official capacities.  There is no indication in 42 U.S.C. § 1983 that Congress

31

intended to abrogate state sovereign immunity, and the
Supreme Court has specifically held that Congress did not
intend to override well-established immunities such as
state sovereign immunity when it enacted § 1983.  See
Will v. Michigan Dept. of State Police, 491 U.S. 58, 67
(1989).  It is equally clear that Vermont has not waived
its sovereign immunity under § 1983.  See 12 V.S.A. §
5601(g) (Vermont Tort Claims Act reserves Eleventh
Amendment immunity for all claims not explicitly waived).
Therefore, Martin's claims for damages against the State
Defendants in their official capacities should be
DISMISSED.

VIII.  Mootness

     Unlike damages claims, official capacity claims
seeking prospective injunctive relief are not treated as
actions against the state.  See Kentucky v. Graham, 473
U.S. 159, 167 n.14 (1985);  Edelman v. Jordan, 415 U.S.
651, 676-77 (1974); Ex parte Young, 209 U.S. 123, 159-60
(1908).  However, the State Defendants argue that
Martin's injunctive relief claims should, nonetheless, be
dismissed as moot due to Martin's transfer to a facility
outside of Vermont.  A case is deemed moot where the

problem sought to be remedied has ceased, or where there "is no reasonable expectation that the wrong will be repeated." Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996). Consequently, a transfer from a prison facility generally moots an action for injunctive and declaratory relief against the transferring facility because the inmate is no longer located there. See Thompson v. Carter, 284 F.3d 411, 415 (2d Cir. 2002) (holding that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility" and affirming district court's dismissal of claims for prospective injunctive and declaratory relief against defendants from transferor facility); Young v. Coughlin, 866 F.2d 567, 568 n.1 (2d Cir. 1989); Williams v. Goord, 142 F. Supp. 2d 416, 420 n.3 (S.D.N.Y. 2001); Graham v. Perez, 121 F. Supp. 2d 317, 325 (S.D.N.Y. 2000).

There is an exception to the mootness principle, however, for claims that are "capable of repetition, yet evad[e] review." Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 71 (2d Cir. 2001) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) and Weinstein v.

33

<u>Bradford</u>, 423 U.S. 147, 149 (1975)).  "The capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  <u>Commer v. District Council 37</u>, 2003 WL 21692816, at *5 (S.D.N.Y. July 21, 2003) (citing <u>Spencer v. Kemna</u>, 523 U.S. 1, 17 (1998)).

Martin has not presented any argument, much less evidence, in response to the State Defendants' mootness claim.[9]  Even if Martin were to speculate that although he is currently incarcerated in Kentucky, he might someday be transferred back to Vermont, such an argument would not save his injunctive relief claims from dismissal.  <u>See</u> <u>Preiser v. Newkirk</u>, 422 U.S. 395, 403 (1975); <u>Murphy v. Hunt</u>, 455 U.S. 478, 482-83 (1982); <u>see also</u> <u>Smith v. Dudley</u>, 190 F.3d 852, 855 (8th Cir.

---

[9]  Instead, Martin states that he is not seeking injunctive relief: "I am seeking damages only."  (Paper 51 at 2).

34

1995); Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1995).  Therefore, this Court should DISMISS Martin's claims for injunctive relief.  Those claims, however, should be dismissed without prejudice, such that if Martin is ever transferred back to Vermont and the policies of which he complains are still in place, he may present his claims to this Court at that time.

IX.  Declaratory Relief

The State Defendants' final claim is that Martin is not entitled to declaratory relief on his "bad day" claim.  In their motion, the State Defendants refer to an amended complaint dated April 20, 2005.  (Paper 34 at 2 n.7).  The Court has received no such filing. Furthermore, in Martin's original complaint he sought only injunctive relief and damages for his "bad day" claim.  (Paper 1 at 7).  Until such time as the Court has received and allowed a complaint pursuing a declaratory judgment on the "bad day" claim, it will not address this issue.  If Martin has, in fact, attempted to file an amendment to his "bad day" claim but the Court has not received it, he may have 30 days from the date of this Report and Recommendation in which to re-submit such an

35

amendment.

X.   <u>Remaining Motions</u>

As part of Martin's amended complaint with respect
to his vegetarian diet claim, he asks that in addition to
accepting the amendment to his complaint, the Court
construe his filing as a "motion for summary judgment and
rule in plaintiff's favor and/or begin the plaintiff's
motion for discovery and grant it."  (Paper 38 at 12).
The facts and legal arguments contained in Paper 38
respond directly to the defendants' motions to dismiss
and/or for summary judgment, and have thus been
construed, in part, as an opposition to those motions.
Martin has not submitted a separate statement of
undisputed facts as required by Local Rule 7.1(c)(1), and
did not put the opposing parties on clear notice of a
summary judgment filing.  Therefore, the Court will not
construe his filing as a summary judgment motion.

With respect to Martin's reference to a "motion for
discovery," the Court has not received any such motion.
If Paper 38 was intended to be a request for discovery to
commence, no such request is necessary.  The parties may
proceed with discovery as set forth in the Federal Rules

of Civil Procedure, and need only enlist the assistance
of the Court when required by those Rules or in the event
of a discovery-related disagreement.  To the extent that
Martin's filing constitutes a motion for discovery and
that motion requires a ruling, the motion is DENIED.[10]

XI.  Plaintiffs Dyjack and Soucy

     In his initial complaint, Martin names two other
inmates, Brian Dyjack and Richard Soucy, as plaintiffs
"for the 'lights' issue only." (Paper 1 at 1).  While
litigants in federal court have a statutory right to
choose to act as their own counsel, an individual who is
not licensed as an attorney "may not appear on another
person's behalf in the other's cause." Iannaccone v.
Law, 142 F.3d 553, 558 (2d Cir. 1998); see also Eagle
Assoc. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir.
1991).  Because Martin cannot represent Dyjack and Soucy,
and since Dyjack and Soucy have failed to appear in this
case themselves, the their claims should be DISMISSED
without prejudice.

_____

     [10]  The Court will, however, issue an Order below
requiring the parties to submit a stipulated discovery
order setting forth the deadlines for discovery, motion
filing and trial.

## Conclusion

For the reasons set forth above, Martin's motions to amend his complaint (Papers 30, 38, 41 and 43) are GRANTED.  The State Defendants' motions to dismiss (Papers 21 and 34) will be construed as motions for summary judgment, and should be GRANTED in part and DENIED in part.  Specifically, Martin's claims of constant illumination and wrongful segregation should be DISMISSED for failure to exhaust administrative remedies. Martin's claims for compensatory damages on his "bad day" claim should also be DISMISSED.  Further, the Court should DISMISS Martin's damages claims against the State Defendants in the official capacities, as well as his claims for injunctive relief on grounds of mootness.

To the extent that Defendant Cotton's first motion to dismiss (Paper 28) incorporates the arguments of the State Defendants in their motions, the above rulings should apply to the claims against Cotton as well.  Until the Court receives Martin's amended "psych" complaint and/or evidence that the "psych" claim has been administratively exhausted, the Court should withhold judgment on the remainder of Cotton's arguments for

dismissal (Papers 28 and 35).

Martin's Paper 38 will not be construed as a motion for summary judgment, and his motion for discovery in Paper 38 is DENIED.  Martin's motion for an enlargement of time to file a responsive memorandum (Paper 50) is GRANTED, and his motion for joinder (Paper 36) is DENIED. Finally, Plaintiffs Dyjack and Soucy should be DISMISSED without prejudice.

It is further ORDERED that Martin shall have 30 days from the date of this Report and Recommendation to re-submit to the Court the above-referenced amendments to his "psych" and "bad day" claims which the Court never received.  The parties shall also, within 30 days of this Report and Recommendation, submit to the Court a stipulated discovery schedule in compliance with Local Rule 26.1(b).

Dated at Burlington, in the District of Vermont, this 4th day of August, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of

the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).