```
            UNITED STATES DISTRICT COURT
                     FOR THE
                DISTRICT OF VERMONT
```

Byron Martin,                   :
        Plaintiff,              :
                                :
     v.                         :    File No. 1:05-CV-28
                                :
Steven Gold, Paul               :
Brosseau, Keith Tallon,         :
Ellen McWard, Michael           :
Foisy, James Kamel,             :
Stephen Lavoie, Dustin          :
Warburton, Keith Reilly,        :
Thomas Powell, Diane            :
Bogdan, Dr. Cotton, Dr.         :
Labatti, Robert Hoffman,        :
Richard Bess, Sue James,        :
Trina Nutter, and Celeste       :
Girrell,                        :
        Defendants.             :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### (Papers 21, 28, 34, 35, 56, 58, 60 and 64)

Plaintiff Byron Martin, a Vermont inmate proceeding *pro se*, claims that his treatment while in prison has been constitutionally deficient.  Martin's amended complaint alleges that the defendants have (1) subjected him to constant illumination in his prison cell; (2) denied him a vegetarian diet in violation of his religious rights; (3) imposed a "bad day" disciplinary sanction without due process; (4) placed him in segregation without due process; (5) denied him medication for his psychiatric needs; and (6) denied him

dentures for a period of one year.  (Papers 1, 30, 38, 41 43 and 56).  The claims of constant illumination and wrongful segregation have been dismissed for lack of exhaustion.  (Papers 55 and 57).  Due to incomplete filings with respect to the psychiatric care and "bad day" claims, the Court has allowed Martin to amend his complaint.  Martin has now submitted the missing filings (Paper 56), and the Court can proceed on the motions to dismiss these claims.

In his amendment to his psychiatric care claim, Martin adds a defamation claim against defendant Paul Cotton, M.D.  Cotton has moved to dismiss Martin's original and amended claims arguing, *inter alia*, that the claims are without merit.  (Papers 28, 35 and 58).  Various arguments by the "State Defendants"[1] with respect to Martin's psychiatric care and "bad day" claims are also pending before the Court.  Finally, Martin has moved (1) to add two additional defendants with respect to his psychiatric care claim (Paper 56), (2) for appointment of counsel (Paper 64), and (3) to amend the stipulated discovery schedule (Paper 60).  For the reasons set forth

---

[1]  The "State Defendants" include all defendants other than Cotton and Labatti.

below, I recommend that the motions to dismiss Martin's psychiatric care claim be GRANTED, and that all claims against Cotton and Labatti be DISMISSED without prejudice.[2]  The portion of the State Defendants' motion to dismiss pertaining to Martin's claim for declaratory relief as part of his "bad day" claim should be DENIED, and Martin's motions to add defendants, for appointment of counsel, and to amend the discovery schedule are DENIED.

## Factual Background

The initial allegations in Martin's complaint were summarized in the Court's prior Report and Recommendation (Paper 57), and the parties' familiarity with those allegations is presumed.  Martin's amendment to his psychiatric care claim (Paper 56-1) alleges that Cotton, among others, failed to provide him with proper psychiatric treatment.  Specifically, Martin asserts that Cotton failed to treat his ADHD, and that instead of prescribing an ADHD-specific drug such as Adderrol or Ritalin, Cotton prescribed Wellbutrin, an anti-

---

[2]  Although defendant Labatti has not yet been served in this case, the only allegations against him are in relation to the psychiatric care claim.  Because I am recommending dismissal of this claim, I also recommend dismissal of the claims against Labatti.

3

depressant.  Martin claims that the only reason he was not given Adderrol and Ritalin is that these drugs have "the potential of being abused."  (Paper 56-1 at 6). Martin requests an injunction ordering DOC staff to provide him with medication, as well as compensatory and punitive damages for failure to properly treat his mental illness.

Martin has also added a claim of defamation, charging that Cotton called him "dishonest and manipulative."  Id. at 4.  This statement, apparently made in the form of a medical note, was then allegedly "printed by more than a few person [sic] to discredit me . . . ."  Id.  In his response to Cotton's motion to dismiss, Martin argues that the statement "was not in the form of an opinion, it was stated as a fact."  (Paper 61 at 2).[3]

Martin's "bad day" amendment (Paper 56-2 at 8-18) adds factual details and information about the people

---

[3]  The document in which the allegedly defamatory statement was written has not been provided to the Court.  Martin refers the Court to "'Paul Cotton Exhibit 1-A,'" but the Court is not aware of any such document having been filed.  Cotton's attorney has apparently received a copy of the document, which he describes as a letter from Martin's advocate at Vermont Protection & Advocacy quoting a note attributed to Cotton that was found in Martin's Department of Corrections records.  (Paper 35 at 1). The note allegedly stated, in part, that ". . . there was no evidence of psychosis, that Mr. Martin was manipulative and dishonest, and no medications were needed to treat him at this time."  Id. at 2.

involved in the alleged wrongdoing, but does not significantly add to the substance of his initial allegations. The amendment does, however, clarify that Martin is asking for a declaratory judgment and punitive damages.[4] The Court may, therefore, now address the defendants' argument (Paper 34 at 18-20) with respect to Martin's request for declaratory relief.

Discussion

I. Motion to Dismiss Standard

On a motion to dismiss, "a court has to consider the legal sufficiency of the claim as stated in the complaint and is not to weigh facts underlying the claim or the merits of the case." Esden v. Bank of Boston, 5 F. Supp. 2d 214, 216 (D. Vt. 1998) (citing Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)). Dismissal is impermissible unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Flores v. S.

---

[4] Martin's prayers for relief on this claim are inconsistent. Early in his amendment he asserts that he is "only seeking monetary damages." (Paper 56-2 at 9). The Court previously dismissed Martin's claims for compensatory damages arising out of his "bad day" claim, and upon review of the amended complaint I see no reason to alter that ruling. At the end of his amended complaint, Martin requests declaratory relief and punitive damages for his "bad day" punishment as alleged in the "Relief" portion of his amended complaint. (Paper 56-2 at 15). The Court presumes that Martin now intends for these requests to be part of his prayer for relief.

5

Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "In ruling on such a motion, the court must look only to the allegations in the complaint and any documents attached to or incorporated by reference in the complaint." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999). Morever, the court must assume all well-pleaded factual allegations to be true and draw reasonable inferences in the light most favorable to the plaintiff. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

II. Exhaustion

Cotton's motion to dismiss incorporates the State Defendants'[5] argument (Paper 21 at 6-10) that Martin has failed to exhaust his administrative remedies with respect to his psychiatric treatment claim. (Paper 28 at 1). The Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a) ("PLRA"), requires prisoners to exhaust the administrative remedies available to them before bringing

---

[5] For reasons set forth in the Court's previous Report and Recommendation, the State Defendants' motion to dismiss for lack of exhaustion was converted into a motion for summary judgment. (Paper 55 at 10-12).

6

suit under § 1983.  In Vermont, the Department of Corrections has developed a three-step grievance system, with the third step being a grievance to the Commissioner.  (Paper 55 at 16-17).  Once the Commissioner has responded to this grievance, the procedure is deemed exhausted.  Id. at 16.

In ruling upon the State Defendants' motion to dismiss, the Court withheld judgment on the exhaustion question as it applied to Martin's claim of inadequate psychiatric care.  Id. at 23.  The Court did not act at that time because Martin referenced documents that were not a part of the Court's file.  Among these documents was an amended complaint on the psychiatric care issue, and an exhibit that allegedly proved exhaustion of that issue.  (Paper 51-2 at 16).  The Court allowed Martin 30 days to file these documents.  (Paper 55 at 23).

Martin has now filed an amended complaint entitled "Inadequate Psychiatric Medication."  (Paper 56).  Attached to the amended complaint is a Grievance Form #3, dated August 24, 2004, in which Martin allegedly grieved the medication issue.  (Paper 56-1 at 15).  The grievance stated that Cotton was prescribing Wellbutrin in lieu of

7

Ritalin or Adderrol because Wellbutrin "has no controlled substance in it.  I told him that I would try it.  If it does not promise [sic] me the same effect that Adderal [sic] has then I want my Adderal [sic].  I will take this to court if I'm forced to, for my own mental health . . . ."  The next words in the Court's copy of the grievance form are cut off.  The only remaining readable text on the grievance appears to state: "And I deserve the bes[t] . . . and settling out for someone . . . ."

On November 8, 2004, Commissioner Steven Gold responded to Martin's complaint.

> I am in receipt of your Grievance #3 dated August 24, 2004.  I understand that Dr. Paul Cotton has prescribed to you a medication that you feel may not be helpful.  I appreciate your cooperativeness in giving this medication a trial to determine its effectiveness.  If you feel this medication is not helpful after an appropriate trial, then please do contact me again.
>
> I hope that you find that the medication prescribed to you by Dr. Cotton proves Effective [sic] and that you will once again enjoy good health!

It is notable in Martin's grievance and Gold's response that there is no discussion of Wellbutrin actually being ineffective.  Indeed, the grievance suggests only that Wellbutrin *might* be ineffective, and that Martin will

likely litigate *if* the Wellbutrin is ineffective and he is not provided the drug of his choice. Correspondingly, Gold states that if the Wellbutrin is not effective, Martin shall notify him, presumably so that the Department of Corrections ("DOC") can offer an alternative.[6]

The purpose of the PLRA is to "reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Indeed, the PLRA was enacted to give prison officials the first opportunity to deal with inmate complaints by internal processes. Id. at 524-25. The PLRA's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court," as well as to clarify the contours of the controversy once it is litigated. Id. at

---

[6] Martin has also submitted a document dated January 13, 2005 (Paper 56-1 at 17), in which he is apparently asking to be seen by Dr. Labatti because "Dr. Labatti . . . told me that he had no problem prescribing me my medication . . . ." It is not clear to whom this document was addressed, and only a portion of the document has been submitted to the Court. The submitted portion of the document does not clearly state that the Wellbutrin has been ineffective.

9

525, 528.

In this case, Martin did not file a grievance complaining that his medication was ineffective. Instead, he warned that the medication might be ineffective, and that litigation could follow.  Because Martin did not explicitly claim that his medication was ineffective, the DOC had no opportunity to employ "administrative redress" through the grievance process. Instead of giving the DOC the first opportunity to deal with a concrete claim, Martin appears to have first alleged that the Wellbutrin was, in fact, ineffective in his complaint to this Court.  His claim of inadequate medication, which is the core of his psychiatric treatment claim, is thus unexhausted, the defendants' motions to dismiss Martin's psychiatric care claim should be GRANTED and the claim should be DISMISSED without prejudice.

III.  <u>Defamation Claim Against Cotton</u>

If the psychiatric care claim is dismissed, Martin's only remaining claims against Cotton are for defamation and, arguably, negligence in the form of medical malpractice.  Unlike a claim of deliberate indifference

to serious medical needs under § 1983 and the Eighth Amendment, defamation and negligence are state law causes of action.  See Siegert v. Gilley, 111 S. Ct. 1789, 1794 (1991) ("Defamation by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation."); Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) (negligence is not a basis for relief under § 1983).  With no valid § 1983 claim pending against Cotton, the Court should decline to exercise supplemental jurisdiction over Martin's state law claims.  See 28 U.S.C. § 1367(c)(3).  Cotton's motions to dismiss should, therefore be GRANTED, and Martin's remaining claims against him DISMISSED without prejudice.

IV.   Motion to Amend Complaint to Add Defendants

Also included in Martin's amendment to his psychiatric care claim is a motion to add defendant John Holt.  (Paper 56-1 at 10).  Martin claims that Holt "could've and should've facilitated this situation with my problems in trying to get a psychiatrist to evaluate me and prescribe the much needed medication . . . ."  Id. Martin further names Janice Ryan as a defendant, explaining that Ryan "is included because of her

11

incompetence as handling my situation.  <u>Id.</u> at 6.  In his attached affidavit, Martin states that Ryan wrote to him about steps that needed to be taken before his medication could be reviewed by Dr. Labatti.  (Paper 56-1 at 9).  Because the allegations against both Holt and Ryan pertain to the unexhausted psychiatric care claim, those claims cannot be brought at this time.  The motion to amend to add Holt and Ryan as defendants is, therefore, DENIED.

V.   <u>"Bad Day" Declaratory Relief Claim</u>

As with his psychiatric care claim, Martin has supplemented his claims with respect to the so-called "bad day" punishment.  In his initial complaint, Martin explained that "bad day" is a disciplinary measure that can include a loss of recreation privileges and "non programming activities for that day."  (Paper 1-2 at 10).  A "bad day" can allegedly be imposed by a correctional officer "for any reason whatsoever" without a "hearing to produce the facts or have an inmate defend his innocence.  The 'punishment' is not very severe yet it is implemented without due process."  (Paper 1-1 at 6).  As noted above, Martin's amendment to his initial claim clarifies that he

is seeking a declaratory judgment and punitive damages. (Paper 56-2 at 15).

The State Defendants argue that Martin is not entitled to a declaratory judgment. (Paper 34 at 18-20). Their argument relies on the Supreme Court's rulings in Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997). In Heck, the Supreme Court held that a prisoner's claim for damages is not cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. In Edwards, where a prisoner was claiming that a disciplinary hearing had violated his due process rights, the Court applied Heck and ruled that the prisoner's claim, which included a request for declaratory relief, could not be brought until the disciplinary decision had been overturned through administrative channels or in a habeas corpus proceeding. 520 U.S.C. at 643-48.

The State Defendants contend that, under Heck and Edwards, Martin's "bad day" claim "is not cognizable under § 1983 because it would necessarily imply the invalidity of that punishment and Plaintiff has not

13

alleged that the punishment was not previously invalidated." (Paper 34 at 20). In this circuit, however, the <u>Edwards</u> holding has been limited to cases where the disciplinary proceeding in question impacted the fact or duration of the prisoner's confinement. <u>See Jenkins v. Haubert</u>, 179 F.3d 19, 27 (1999) (noting that <u>Edwards</u> focused on disciplinary punishment that extended the length of the prisoner's overall prison stay); <u>Sims v. Artuz</u>, 230 F.3d 14, 24 (2000) (<u>Edwards</u> only discussed the prisoner's loss of good time credits). <u>Edwards</u> does not apply where the claim "was properly characterized as a challenge to the conditions of his confinement, rather than as a challenge to the fact or duration or his confinement." <u>Jenkins</u>, 179 F.3d at 27.

Here, there is no indication in the record that Martin's "bad day" punishment had any bearing on the fact or duration of his sentence. Accordingly, the Court should construe his claim as a challenge to the conditions of his confinement, and hold that <u>Edwards</u> does not apply. The State Defendants' motion to dismiss Martin's request for declaratory relief with respect to his "bad day" claim should, therefore, be DENIED.

VI.  Appointment of Counsel

Martin's most recent motion is for appointment of counsel. (Paper 64). The Second Circuit has set forth the factors to be considered when deciding whether to appoint counsel for a party proceeding *in forma pauperis*. See Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) (citing Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986)). The threshold consideration is whether the party's position seems likely to be of substance. Once satisfied of the substantive merit of the case, the Court should assess: 1) the party's ability to investigate the crucial facts; 2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; 3) the party's ability to present the case; 4) the complexity of the legal issues; and 5) any other special reason in the case why appointment of counsel would be more likely to lead to a just determination. Id.

In this case, the facts underlying Martin's various claims have not yet been fully developed. Discovery in this case is not scheduled to end until May, 2006. It is therefore difficult for the Court to assess the merits of

Martin's claims at this time.  Moreover, although Martin contends that the issues in his case are "very complex," he has not shown that he will be unable to present his case without the assistance of counsel.

If, as the record becomes more developed through the parties' discovery, it becomes clear that Martin is unable to represent himself, he may resubmit a motion for appointment of counsel for the Court's consideration.  At this stage in the case, however, his motion for appointment of counsel (Paper 64) is DENIED.

## Conclusion

For the reasons set forth above, I recommend that Cotton's motions to dismiss (Papers 28, 35 and 58) be GRANTED, and that all claims against Cotton be DISMISSED without prejudice.  Because the only claims against defendant Labatti are in relation to Martin's psychiatric care, I recommend that all claims against Labatti also be DISMISSED without prejudice.  Furthermore, to the extent that the State Defendants have moved to dismiss and/or for summary judgment on Martin's psychiatric care claims (Papers 21 and 34), their motion should be GRANTED. The State Defendants' motion to dismiss Martin's claim

for declaratory relief with respect to his "bad day" claim (Paper 34 at 18-20) should be DENIED, and Martin's motion to add defendants (Paper 56), motion for appointment of counsel (Paper 64), and motion to shorten the deadlines on the discovery schedule (Paper 60) are DENIED.

　　　Dated at Burlington, in the District of Vermont, this 22nd day of December, 2005.

　　　　　　　　　　　　　　　/s/ Jerome J. Niedermeier
　　　　　　　　　　　　　　　Jerome J. Niedermeier
　　　　　　　　　　　　　　　United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).