UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Byron Martin, Brian          :
Dyjack, and Richard Soucy,   :
        Plaintiffs,          :
                             :
    v.                       :    File No. 1:05-CV-28
                             :
Steven Gold, Paul            :
Brosseau, Keith Tallon,      :
Ellen McWard, Michael        :
Foisy, James Kamel,          :
Stephen Lavoie, Dustin       :
Warburton, Keith Reilly,     :
Thomas Powell, Diane         :
Bogdan, Dr. Cotton, Dr.      :
Labatti, Robert Hofmann,     :
Richard Bess, Sue James,     :
Trina Nutter, Celeste        :
Girrell and Bernadette       :
Dewing,                      :
        Defendants.          :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 76, 79 and 90)

Plaintiff Byron Martin, a Vermont inmate proceeding

*pro se*, claims that his treatment while in prison has

been constitutionally deficient.  Martin's amended

complaint alleges that the defendants have (1) subjected

him to constant illumination in his prison cell; (2)

denied him a vegetarian diet in violation of his

religious rights; (3) imposed a "bad day" disciplinary

sanction without due process; (4) placed him in

segregation without due process; (5) denied him

medication for his psychiatric needs; and (6) denied him dentures for a period of one year.  The claims of constant illumination, wrongful segregation and inadequate psychiatric care have been dismissed for lack of exhaustion.

Currently pending before the Court is the defendants' motion for summary judgment.[1]  With respect to each of Martin's remaining claims, the defendants present three arguments.  First, the defendants argue that Martin's claims fail to show sufficient personal involvement.  Second, the defendants contend that Martin's factual allegations in support of his claims for punitive damages are merely conclusory.  Third, the defendants claim that Martin is not entitled to declaratory relief because he is no longer incarcerated at the facility in which the alleged events took place.  For the reasons set forth below, I recommend that the defendants' motion for summary judgment be GRANTED in part and DENIED in part.

---

[1]  The docket also reflects a recent motion to amend the dental care claim (Paper 90).  This motion, however, is identical to a motion filed previously (Paper 40), which motion was GRANTED.  Therefore, Paper 90 is also GRANTED.  Martin's motion to proceed for trial and for a transportation order (Paper 76) is premature, as no trial date has been set at this time.  Paper 76 is, therefore, DENIED.

<u>Factual Background</u>

The initial allegations in Martin's complaint were summarized in the Court's prior Report and Recommendation (Paper 57), and the parties' familiarity with those allegations is presumed.  Briefly stated, Martin has three remaining claims.  In his "bad day" claim, Martin charges that the Southern State Correctional Facility's ("SSCF") "bad day" punishment violates due process.  In his initial complaint, Martin explained that "bad day" is a disciplinary measure that can include a loss of recreation privileges and "non programming activities for that day."  (Paper 1-2 at 10).  A "bad day" can allegedly be imposed by a correctional officer "for any reason whatsoever" without a "hearing to produce the facts or have an inmate defend his innocence.  The 'punishment' is not very severe yet it is implemented without due process."  (Paper 1-1 at 6).  Martin's amendment to his initial claim clarifies that he is seeking a declaratory judgment and punitive damages.  (Paper 56-2 at 15).[2]

Martin's next claim is that he is being deprived of

---

[2]  Martin's amended complaints include affidavits sworn to before a notary public.  The contents of these affidavits may, therefore, be considered at summary judgment.  <u>Cf.</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.").

a vegetarian diet in violation of his First Amendment rights. (Paper 1 at 4-5). Martin claims that he is a Buddhist, and that his religious beliefs do not allow him to eat meat. He requests an injunction allowing him vegetarian meals, as well as compensatory and punitive damages arising out of defendants Gold and Tallon "refusing a vegetarian diet to me maliciously and sadistically." Id. at 5.

His amendment to the dietary claim is comprised of 19 pages of handwritten text, provides additional explanation about his Buddhist faith, and asserts a new claim under the Religious Freedom Restoration Act ("RFRA"). (Paper 38). Martin alleges that although a prison facility in Kentucky allowed him vegetarian meals from the start, Vermont prisons required him to litigate for two months "until they saw the light." Id. at 5.

Finally, Martin alleges that the last of his teeth were pulled while he was incarcerated, but DOC failed to provide him with dentures for over a year. Martin specifically blames defendant Bogdan, "head nurse of the Vt. DOC," for his mistreatment, and asks for compensatory and punitive damages.

In the amendment to his dental claim, Martin explains that he had nearly all of his teeth when he was first incarcerated in 2002.  (Paper 40-1 at 2).  He claims that "because of various reasons, such as stress related physical injury due to the extreme freezing temp [sic] . . . my teeth began to hurt."  Id.  By November, 2003, all of his teeth had been pulled.  Martin claims that he did not receive dentures until 13 months later. Id.  In the meantime, Martin allegedly suffered "pain so bad that I had to lay down at night with such an excruciating headache along with an empty stomach because when I tried to eat the prison food without teeth I could not chew because the pain was too intense to try and break up the food in my mouth with no teeth."  Id. at 6.

## Discussion

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the evidence

submitted must be viewed in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Even if parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (internal citations and quotation marks omitted).  In addition, once the moving party has made a sufficient showing, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  Id. (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

Where a party is proceeding pro se, a Court must read the pro se litigant's supporting papers liberally

and interpret them "'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  The application of this liberal standard does not, however, "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003).

I.   "Bad Day" Claim

     Martin's "bad day" claims seeks a declaratory judgment and punitive damages.  To the extent that Martin is also seeking compensatory damages, the Court has dismissed any such claim for failure to show actual physical injury as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).  (Paper 55 at 26).  The defendants now argue that Martin's "bad day" claim is moot because he is no longer incarcerated at SSCF, and that his punitive damages claim is unsupported.

     A.  Mootness

     "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."

Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006)
(citing Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir.
1996) (per curiam); Young v. Coughlin, 866 F.2d 567, 568
n. 1 (2d Cir. 1989); Mawhinney v. Henderson, 542 F.2d 1,
2 (2d Cir. 1976)).  There is, however, an exception to
this principle.  The court may decide a claim that is
moot where the claim is "'capable of repetition, yet
evading review'" and the repetition will affect "the same
complaining party." Altman v. Bedford Cent. Sch. Dist.,
245 F.3d 49, 71 (2d Cir.) (quoting City of Los Angeles v.
Lyons, 461 U.S. 95, 109 (1983) and Weinstein v. Bradford,
423 U.S. 147, 149 (1975) (per curiam)), cert. denied sub
nom. Debari v. Bedford Cent. Sch. Dist., 534 U.S. 837
(2001).  "The capable-of-repetition doctrine applies only
in two exceptional situations, where the following two
circumstances are simultaneously present: (1) the
challenged action is in its duration too short to be
fully litigated prior to cessation or expiration, and (2)
there is a reasonable expectation that the same
complaining party will be subject to the same action
again." Commer v. Dist. Council 37, 2003 WL 21692816, at
*5 (S.D.N.Y. July 21, 2003) (citing Spencer v. Kemna, 523

U.S. 1, 17 (1998)).

Martin claims that while the defendants' summary judgment motion has been pending, he has been scheduled to return to SSCF.  Indeed, the docket reflects Martin's change of address on August 30, 2006.[3]  The docket also reflects that as of October 13, 2006, Martin had been transferred back to his prior facility in Kentucky. There is no indication in the record that Martin will be incarcerated at the SSCF in the future.

While it is certainly possible that Martin might be sent back to Vermont, and to the Southern State Correctional Facility specifically, he has made no showing of a "reasonable expectation" that he will be returned to that institution.  If Martin were to argue that he *could* be returned to the Southern State Correctional Facility, such an argument would likely be speculative, and courts have generally held that this sort of speculation about a re-transfer is insufficient to overcome the mootness rule.  See Preiser v. Newkirk, 422 U.S. 395, 403 (1975); Murphy v. Hunt, 455 U.S. 478,

---

[3]  Martin appears to have been transported back to Vermont, at least in part, pursuant to an order by this Court for attendance at an Early Neutral Evaluation in an unrelated case.  See Butts v. ConAgra Foods, Inc., File No. 2:06-CV-1 (Paper 29).

482-83 (1982); <u>Smith v. Dudley</u>, 190 F.3d 852, 855 (8th Cir. 1995); <u>Higgason v. Farley</u>, 83 F.3d 807, 811 (7th Cir. 1995).

Even if Martin's claims were capable of repetition under the rule, they would not evade review.  If transferred back to SSCF and given a "bad day" punishment, Martin could file another motion for preliminary injunctive relief.  <u>See</u>, <u>e.g.</u>, <u>Vega v. Lantz</u>, 2005 WL 1802145, at *2 (D. Conn. July 27, 2005). Consequently, Martin has not satisfied the exception to the mootness doctrine, and his claim for declaratory relief on his "bad day" claim should be DISMISSED.

The defendants further argue that "'where the complained of conduct has ceased, declaratory relief survives a mootness challenge only insofar as it seeks to declare a set of legal relations which attributes legal liability for damages to the party against whom the relief is sought.'" (Paper 79-8 at 19) (quoting <u>Lane v. Reid</u>, 559 F. Supp. 1047, 1052 (S.D.N.Y. 1983)).  In his request for relief, Martin seeks punitive damages and declaratory relief.  (Paper 56-2 at 15).  As stated previously, the Court has dismissed any compensatory

damages claim, and for reasons set forth below, Martin is not entitled to punitive damages.  Therefore, with no viable claim for damages against the defendants on the "bad day" cause of action, Martin's request for a declaratory judgment does not withstand the defendants' mootness challenge.  See, e.g., Community Health Care Ass'n of New York v. DeParle, 69 F. Supp. 2d 463, 477 (S.D.N.Y. 1999) (declaratory judgment request moot where plaintiffs could not seek damages and did not allege "any redressable continuing effect" from defendants' conduct).

   B.   Punitive Damages

   A claim for punitive damages under § 1983 must show that "'the defendant's conduct [was] motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  See Disorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Martin has failed to meet his burden on this claim.

   In opposition to the defendants' motion for summary judgment, Martin argues that his "bad day" punishments were not justified.  "A jury would be convinced that there was extrinsic circumstances for each 'Bad Day' I

11

received that if the perpetrators, the [correctional officers] that gave me a 'Bad Day' would have fully listened . . . they would have clearly seen their error in giving me a 'Bad Day.'" (Paper 83 at 10-11).  With respect to the supervisory defendants, Martin claims that their liability stems from the fact that the "bad day" punishment was a formal part of the prison's rules.

The fact that correctional officers were not receptive to Martin's explanations for his behavior does not constitute evil motive or intent.  Furthermore, there is no suggestion that these officers either intentionally or recklessly denied Martin a federally protected right. Although Martin claims that the "bad day" punishment denies inmates their due process rights, the correctional officers at issue were merely issuing an established form of prison discipline.  While the officers allegedly issued the discipline in bad faith, their actions were not plainly intended to deny Martin his due process rights.  If Martin's constitutional rights were, in fact, violated, the violation was merely a byproduct of the established policy.

Two inmates have submitted affidavits on Martin's

behalf, claiming that defendant Lavoie apologized for one of the "bad day" punishments and conceded that it had been a mistake.   In the first affidavit, inmate David McGee states that he witnessed Lavoie telling Martin that the "bad day" had been the result of a misunderstanding. When Martin clarified the issue, Lavoie reportedly apologized and told Martin, "Sorry, I owe you one."   The second affidavit, submitted by inmate Theodore Pecor, corroborates McGee's recollection of the conversation. (Paper 79 at 17-18).   Rather than show evil motive or intent, however, these affidavits demonstrate a simple mistake and a resulting apology.   Consequently, the affidavits do not support an award of punitive damages.

In a previous ruling, the Court declined to dismiss Martin's punitive damages claims without allowing him the opportunity to conduct discovery.   Martin now claims that the defendants have failed to respond to his interrogatories.   These interrogatories, however, do not address the punitive damages question specifically. (Paper 83 at 16-17).   While Martin does request a statement as to the reasons for each of the "bad day" punishments, his grievance on the issue reveals that he

13

was given a "bad day" because of his "attitude."  (Paper

83).  Moreover, there is no allegation that "bad day"

punishments were given without any explanation

whatsoever.  Instead, as Martin explains in his

opposition memorandum, the defendants were allegedly

unreceptive to his explanations for his conduct.  As

stated above, this lack of receptiveness is not evidence

of evil motive, intent, or reckless indifference.

Consequently, I recommend that Martin's claims for

punitive damages on his "bad day" claim be DISMISSED.

II.  <u>Vegetarian Diet Claim</u>

Martin claims that defendants Gold, Hofmann, Tallon,

McWard and Foisey violated his rights under the First

Amendment and RFRA by failing to provide him with a

vegetarian diet.  Martin also argues that denying him a

diet that conforms with his Buddhist faith is cruel and

unusual punishment in violation of the Eighth Amendment.

For relief, Martin seeks compensatory and punitive

damages, as well as a declaratory judgment.  In their

motion for summary judgment, the defendants argue (1)

that Martin has failed to allege that these named

defendants were personally involved, (2) has presented

14

inadequate evidence for an award of punitive damages, and
(3) that his request for a declaratory judgment is moot.

A.  Personal Involvement

As an initial matter, the defendants claim that
Martin may not rely on his complaint, and that his
interrogatory responses do not show sufficient personal
involvement for liability under § 1983.  In general,
allegations in a complaint are insufficient to oppose a
properly supported motion for summary judgment.  See
Nichols v. Pesanti, 2005 WL 356776, at *5 (D. Conn. Feb.
11, 2005) (citing Goenaga v. March of Dimes Birth Defects
Foundation, 51 F.3d 14, 18 (2d Cir. 1995)).  However, as
noted above, Martin's amendments to his complaint each
contain an affidavit setting forth, under oath, relevant
facts.  Also, in response to the motion for summary
judgment, Martin has submitted a sworn "declaration" of
facts on each issue.  (Paper 87-1).  The Court should
treat these submissions as affidavits, and may consider
them at summary judgment.  See, e.g., Colon, 58 F.3d at
872.

The defendants most directly involved with Martin's
request for a vegetarian diet were Tallon, Foisey, and

McWard.  In his interrogatory responses, Martin stated
that he made personal requests to each of these
defendants.  For example, Martin explains in his sworn
response to summary judgment that he sought Tallon out at
a church service, and made a personal plea for a
vegetarian diet.  Tallon allegedly denied his request.
(Paper 87-1 at 4-5).

Foisey was the kitchen supervisor at SSCF.  Martin
allegedly spoke with supervisor Sue Kelley about his need
for a vegetarian diet, and Kelley passed Martin's request
on to Foisey.  Foisey denied the request, and reportedly
told Martin "face to face that he did not authorize a
vegetarian diet for me and he would never authorize a
vegetarian diet . . . ."  Id. at 3.  Kelley subsequently
arranged for Martin to work in the kitchen so that he
would be able to consume enough food each day.

Defendant McWard is named because she denied
Martin's grievance.  On October 24, 2004, Martin filed a
Grievance Form #1 on the vegetarian diet issue, claiming
a denial of his First Amendment rights.  McWard signed
the response, a Grievance Form #2 dated October 29, 2004,
in her role as Work Site Manager.  The form states that

16

the Work Site Manager's decision was "answered - no special diets."

When compared to Tallon and Foisey, McWard's involvement was less direct and presents a close question in terms of § 1983 liability.  Some courts in this circuit have held that a supervisory official's denial of a grievance can suffice to show personal involvement. Brooks v. Chappius, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006) (citing Atkinson v. Selsky, 2004 WL 2319186, at *1 (S.D.N.Y. Oct. 15, 2004)).  The denial, however, should at least show that the supervisor was aware of the plaintiff's condition.  See McKenna v. Wright, 2004 WL 102752, at *6 (S.D.N.Y. 2004).

Here, Martin's Grievance #1 plainly stated that he required a vegetarian diet because of his religious beliefs.  The institution's response, signed by McWard, was that no special diet would be allowed.  McWard appears to have written a portion of the denial herself, and it is reasonable to presume that she read Martin's allegation before doing so.  She was, therefore, aware of Martin's religion-based claim when she denied his grievance, and summary judgment on the claim against her

should be DENIED.

In contrast, defendants Gold and Hofmann may not be held liable on this claim.  Gold is the past Commissioner of the Vermont Department of Corrections ("DOC"), and Hofmann is the current Commissioner.  Martin's contention with respect to both Gold and Hofmann is that he notified them of his claim through a Grievance Form #3.  There is no record of these defendants having received Martin's grievance, or of their submitting responses.

Personal liability cannot be imposed on a state official under a theory of *respondeat superior*.  <u>See</u> <u>Black v. Coughlin II</u>, 76 F.3d 72, 74 (2d Cir. 1996).  Consequently, the personal involvement of a supervisory official may only be established when:

> (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

<u>Johnson v. Newburgh Enlarged Sch. Dist.</u>, 239 F.3d 246,

18

254 (2d Cir. 2001) (citing <u>Colon</u>, 58 F.3d at 873).

Despite the second prong of this test, courts in this circuit have uniformly held that a supervisor's receipt of a letter or grievance will not establish personal involvement.  <u>See</u> <u>Woods v. Goord</u>, 2002 WL 731691, at *1 (S.D.N.Y. Apr. 23, 2002) (collecting cases).  As one court noted, "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability."  <u>Walker v. Pataro</u>, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).  Because Martin's claims against Gold and Hofmann amount to no more than notice through a letter and/or the grievance process, his claims against them with respect to the deprivation of a vegetarian diet should be DISMISSED for lack of personal involvement.

   B.  <u>Punitive Damages</u>

   As set forth above, Martin may only recover punitive damages if he can show that "'the defendant's conduct [was] motivated by an evil motive or intent, or when it

19

involves reckless or callous indifference to the federally protected rights of others.'"  See Disorbo, 343 F.3d at 186 (quoting Smith, 461 U.S. at 56).  Martin's vegetarian diet claim does not meet this demanding standard.

Although the Court must construe the facts in Martin's favor, it nonetheless appears from the evidence presented that SSCF did not generally honor requests for a vegetarian diet.  In the institution's response to Martin's Grievance #1, a prison official wrote: "As previously stated, vegetarian diets are not recognized as 'special diets' at this facility."  If the defendants knew that denying Martin a vegetarian diet might violate his constitutional rights, Martin has not provided any evidence of such knowledge other than the fact that he was claiming such a violation in his grievances.  Indeed, the fact that the defendants were so direct, both personally and on paper, about the denials suggests that they were simply following facility policy.  Despite his bald claim that the defendants knew they were violating his rights, Martin has offered nothing to show that they acted with either evil motive or in reckless indifference

to those rights.  Accordingly, I recommend that Martin's
claim for punitive damages on his vegetarian diet claim
be DISMISSED.

    C.  Mootness

    As with Martin's "bad day" claim, Martin's transfer
out of Vermont moots his request for a declaratory
judgment on his vegetarian diet claim.  Martin has not
shown that he will be returned to SSCF, and any claim
that relies on future re-incarceration at SSCF is barred
as speculative.[4]

III.  <u>Dental Care Claim</u>

    With respect to Martin's claim of inadequate dental
care, the defendants again argue lack of personal
involvement, insufficient support for punitive damages,
and mootness.  The defendants named on this claim are
Gold, Hofmann, Powell, Bogdan, Oddy and Dewing.  As to
the question of personal involvement, the defendants have
moved for summary judgment only on the claims against
Gold, Hofmann and Powell.  The punitive damages and
mootness arguments are asserted on behalf of each of

---

[4]  The defendants have only moved for summary judgment on Martin's RFRA
claim with respect to the request for a declaratory judgment.  (Paper 79-
8).  The Court expresses no opinion as to whether Martin is entitled to
other relief under his RFRA claim.  The parties are invited to brief this
issue in a future filing.

these named defendants.

A.  Personal Involvement

Martin alleges that both Gold and Hofmann, in their roles as Commissioners, were personally involved when he was allegedly denied proper dental care.  He claims that defendant Powell "is involved because he is the medical director of the Vt. D.O.C. and it is his responsibility to take care of medical/dental problems in facilitating the process so that inmates receive proper care."  (Paper 40-1 at 3).  Therefore each of these defendants is being sued as supervisors.

In his sworn response to the summary judgment motion, Martin directs the Court to exhibits attached to his amended complaint (Paper 40-2) as evidence of the defendants' involvement.  These exhibits include grievances and health services request forms, none of which show that Gold, Hofmman or Powell were personally involved in his care.  As with the vegetarian diet claim, the only evidence that Gold or Hofmann may have had knowledge of Martin's claims are grievance forms submitted to the Commissioner's office.  There is no evidence in the record showing that Powell had actual

22

notice of Martin's dental care claims.  Because supervisors cannot be held liable under *respondeat superior*, and since the mere receipt of a grievance or letter will not render a supervisor liable under § 1983, Martin's dental care claims against these three defendants should be DISMISSED.  See, e.g., Walker, 2002 WL 664040, at *12.

Martin argues that the defendants are not entitled to summary judgment because they have not come forward with affidavits or other evidence to prove their lack of personal involvement.  This argument misconstrues the defendants' burden at summary judgment.  "[A] defendant may move for summary judgment on the ground that the plaintiff has failed to adduce any evidence of an element of plaintiff's claim, and if the plaintiff fails in response to contest this assertion or adduce such evidence, defendant, without more, will prevail." Gianullo v. City of New York, 322 F.3d 139, 140 n.2 (2d Cir. 2003); see also Webster v. The City of New York *et al.*, 333 F. Supp. 2d 184, 207 (S.D.N.Y. 2004) (holding that defendants satisfied their burden in moving for summary judgment "by showing - that is pointing out to

the district court - that there is an absence of evidence
to support the nonmoving party's case") (citing Pepsico.,
Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002)).
Here, the defendants make no affirmative assertions.
Instead, they argue that even if the Court accepts
Martin's evidence, that evidence fails to support his
claims against the supervisory defendants as a matter of
law.  The Court agrees, and I therefore recommend that
the motion for summary judgment with respect to
defendants Gold, Hofmann and Powell on the dental care
claim be GRANTED.

     B.  Punitive Damages

     Martin is seeking punitive damages on his dental
care claim.  He premises his argument on the allegation
that several of the defendants knew of his need for
dentures for over nine months, yet failed to take
appropriate action.  His exhibits confirm that he did not
receive his dentures until several months after he began
grieving the issue.

     Martin first grieved his denture claim in March,
2004.  At that point, he had already been without teeth
since November, 2003, and as he stated in his grievance,

was malnourished because of his inability to chew food. In his grievance, Martin inquired as to how dentures would be paid for since he was unable to afford dental work on his prison salary.  In April, 2004, DOC requested a dental assessment, requested a payment authorization, and informed Martin that authorizations were determined on a case by case basis.  Martin was approved for dentures in May, 2004.

Despite this approval, Martin did not receive his dentures for another five months.  During this time, he submitted grievances and requests for medical attention. Although some of his requests received responses assuring him that he would be receiving his dentures, months passed with no progress.  Finally, in October, 2004, Martin was submitting medical requests on nearly a daily basis.  On October 3, 2004 he wrote, "I need to see a dentist immediately, please.  My gums hurt and it is very painful for me to eat anything because I had all my teeth pulled by the D.O.C., yet I need to get fitted for dentures."  He filed similar requests in the following days.  Impressions were finally made on October 21, 2004, but as of October 28, 2004, Martin still had not received

his dentures.  In his amended complaint, Martin states that he received his dentures in December, 2004.  (Paper 40-1 at 5).

Martin claims that the defendants' conduct violated his rights under the Eighth Amendment.  Once again, in order for punitive damages to be awarded, Martin must show that "'the defendant's conduct [was] motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  See Disorbo, 343 F.3d at 186 (quoting Smith, 461 U.S. at 56).  While Martin has not provided any evidence of evil motive or intent, a reasonable factfinder could conclude, based upon the current record, that certain defendants acted with reckless or callous indifference.

The defendants have provided no affidavits, testimony, or other admissible evidence to explain why it took several months to provide Martin with dentures. Unlike the vegetarian diet claim, Martin's submissions on this claim demonstrate that the type of delay he experienced might have constituted a violation of his rights.  See, e.g., Boyd v. Knox, 47 F.3d 966, 969 (8th

Cir. 1995) ("A three week delay in dental care, coupled with knowledge of the inmate patient's suffering, can support a finding of an Eighth Amendment violation under section 1983") (citation omitted); <u>Fields v. Gander</u>, 734 F.2d 1313 (8th Cir. 1984) (claim stated where plaintiff alleged defendants knew of pain resulting from infected tooth but delayed in providing dental care for three weeks); <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 201 (9th Cir. 1989) (claim stated where plaintiff alleged that loss of dentures caused severe pain, bleeding gums, and breaking teeth, yet defendants took no action to provide pain relief or prescribe a soft-food diet and delayed three months in obtaining replacement dentures); <u>cf.</u> <u>Dean v. Coughlin</u>, 623 F. Supp. 392, 401 (S.D.N.Y. 1985) (deliberate indifference may be manifested by refusal of treatment).  Indeed, a reasonable factfinder could conclude that leaving a prisoner without dentures for several months, such that he is in pain, cannot chew his food, and thus cannot take in sufficient nourishment, constitutes callous indifference to that prisoner's rights.

On a more developed record, it may become clear that

the defendants were not, in fact, either deliberately or
recklessly indifferent to Martin's needs.  Alternatively,
additional facts may also narrow the allegedly
unconstitutional conduct to specific defendants.  Based
upon the current record, however, and viewing the facts
in a light most favorable to the non-moving party, the
Court should find that a reasonable jury could find in
Martin's favor on his claim for punitive damages.  I
therefore recommend that the defendants' motion for
summary judgment on Martin's claim for punitive damages
with respect to his dental care claim be DENIED.

    C.  <u>Mootness</u>

As with Martin's other claims, his transfer out of
Vermont moots his request for a declaratory judgment on
his vegetarian diet claim.  Martin's remaining claim for
declaratory judgment should, therefore, be DISMISSED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that
the defendants' motion for summary judgment (Paper 79) be
GRANTED in part and DENIED in part.  Specifically, I
recommend that Martin's "bad day" claim, his requests for
a declaratory judgment on each of his claims, and all

28

claims against defendants Gold, Hofmann and Powell be
DISMISSED.  I further recommend that Martin's request for
punitive damages on his vegetarian diet claim be
DISMISSED.  The motion for summary judgment should be
otherwise DENIED.  Martin's motion to proceed for trial
and for a transportation order (Paper 76) is DENIED, and
his motion to amend (Paper 90) is GRANTED.

Dated at Burlington, in the District of Vermont,
this 8th day of December, 2006.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).